# EXHIBIT 1

| | | |
|---|---|---|
| JOHN BONHAM, CHARLYNN BONHHAM, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | DEFENDANTS' PARTIAL MOTION TO DISMISS |
| WOLF CREEK ACADEMY, ABOUT FACE MINISTRIES, PATRICIA A. JONES, JAMES E. JONES and JEREMY C. JONES, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, Defendants Wolf Creek Academy, About Face Ministries, Patricia A. Jones, James E. Jones, and Jeremy C. Jones (hereinafter collectively referred to as "Defendants") hereby move to dismiss Plaintiffs' causes of action 2 through 12 and their unnumbered demand for punitive damages, as each of these claims fail to state a claim upon which relief can be granted.

In support of this Motion, Defendants rely on the Complaint filed in this action as well as the Brief in Support of Defendants' Partial Motion to Dismiss being contemporaneously filed herewith.

WHEREFORE, Defendants respectfully request that these claims be dismissed in their entirety and with prejudice.

Respectfully submitted, this the 25th day of October, 2010.

**/s/Jonathan W. Yarbrough**
N.C. State Bar No. 21316
Email: jyarbrough@constangy.com
**/s/William J. McMahon, IV**
William J. McMahon, IV
N.C. State Bar No. 34097
Email: bmcmahon@constangy.com
CONSTANGY, BROOKS & SMITH, LLP
80 Peachtree Road, Suite 208
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2010, I electronically filed **DEFENDANTS'**

**PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following: Robert C. Carpenter

(rccarpenter@jchlawfirm.com) and I hereby certify that I have mailed by United States Postal

Service the document to the following non CM/ECF participants: none.

**/s/William J. McMahon, IV**
William J. McMahon, IV
N.C. State Bar No. 34097
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112
bmcmahon@constangy.com

JOHN BONHAM, CHARLYNN )
BONHHAM, on behalf of themselves )
and others similarly situated, )
 )
Plaintiffs, )
 )
v. )    BRIEF IN SUPPORT OF
 )    DEFENDANTS' PARTIAL
WOLF CREEK ACADEMY, ABOUT )    MOTION TO DISMISS
FACE MINISTRIES, PATRICIA A. )
JONES, JAMES E. JONES and )
JEREMY C. JONES, )
 )
Defendants. )

## INTRODUCTION

Plaintiffs John Bonham and Charlynn Bonham ("the Bonhams") brought this action against Defendants alleging that Defendant Wolf Creek Academy—a boarding school for troubled teens—failed to pay them, and others similarly situated, certain overtime wages for their work as house parents, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. The Bonhams have also asserted various ancillary state law claims only on behalf of themselves. *See* Compl. ¶ 2. Pursuant to Local Rule 7.1, Defendants now move to dismiss, with prejudice, those state law claims, as each of them fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I. MOTION TO DISMISS STANDARD

A motion to dismiss tests the legal sufficiency of the complaint. A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Specifically, "a plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citation omitted). The pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*).

Under this standard, a court must accept the complaint's factual allegations as true, but need not accept the legal conclusions drawn from the facts. *See Iqbal*, 129 S.Ct. at 1949; *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). Similarly, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Jordan*, 458 F.3d at 338.

## II. SECOND CAUSE OF ACTION – NORTH CAROLINA WAGE AND HOUR ACT

In their second cause of action, the Bonhams have alleged that Defendants failure to pay them their wages violates N.C.G.S. § 95-25.4—the overtime provision of the North Carolina Wage and Hour Act ("NCWHA"). However, N.C.G.S. § 95-25.14 provides that the provisions of the NCWHA concerning overtime and minimum wages do not apply to, among others, "(1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined by the Fair Labor Standards Act..." *See also Spencer v. Hyde County*, 959

F.Supp. 721, 727 (E.D.N.C. 1997) (dismissing NCWHA claim because of same exemption under N.C.G.S. § 95-25.14); *Martin v. Airborne Express*, 16 F.Supp.2d 623, 629 (E.D.N.C. 1996).

As in *Spencer*, the Bonhams have alleged in their Complaint that Defendants "were an enterprise engaged in interstate commerce pursuant to 29 U.S.C. § 203(s)." *See* Compl. ¶ 76. Although denying any liability, Defendants concede for purposes of this motion that the Bonhams' claim for unpaid overtime wages is governed by the FLSA and that Wolf Creek Academy was and is an enterprise pursuant to 29 U.S.C. § 203(s)(1)(B). Accordingly, the Bonhams' NCWHA claim should be dismissed.

## III. THIRD AND FOURTH CAUSES OF ACTION – BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD

In their third and fourth causes of action, the Bonhams have asserted claims for breach of fiduciary duty and constructive fraud arising out of Defendants' alleged mischaracterization of the Bonhams' "wages and employment status." *See* Compl. ¶¶ 91, 95. Both of these claims should be dismissed because the Bonhams have not alleged the requisite facts to establish that a fiduciary relationship existed and, additionally, the claims are preempted by the FLSA.

As the North Carolina Supreme Court has noted, "[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Such a relationship has been broadly defined as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence…[and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'" *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (internal citations omitted). Although the concept of a fiduciary duty is broad, the general rule is that 'the relation

1199296

of employer and employee is not one of those regarded as confidential.' *Dalton*, 353 N.C. at 651, 548 S.E.2d at 708 (internal citations omitted). Here, the Bonhams have simply recited a legal conclusion that "[a] relationship of trust and confidence existed between the Bonhams and Defendants" (Compl. ¶ 89), but have no alleged no specific facts that make their employer-employee (or company-independent contractor) relationship a fiduciary one. Accordingly, their breach of fiduciary duty claim should be dismissed.

Although related to a claim for breach of fiduciary duty, constructive fraud is technically a separate claim under North Carolina law. To survive a motion to dismiss, a constructive fraud claim must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured. *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *White*, 166 N.C. App. at 294, 603 S.E.2d at 156. As set forth above, however, the Bonhams have failed to plead facts to show a fiduciary relationship (i.e. a relationship of trust and confidence) between Defendants and the Bonhams in the first place, and so a claim for constructive fraud similarly cannot be maintained.

Aside from failing to plead a requisite fiduciary relationship—an essential element to both causes of action—these claims are also subject to dismissal because they are preempted under the FLSA. In *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), the Fourth Circuit addressed a similar scenario involving state law claims for breach of contract, negligence, and fraud arising out of Sara Lee's alleged failure to compensate its employees for time spent complying with a mandatory uniform policy. After analyzing the issue of preemption at length,

the Court ultimately held that "Congress prescribed exclusive remedies in the FLSA for violation of its mandates" and that the employees' "FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption." *Anderson*, 508 F.3d at 194. Like the claims at issue in *Anderson*, the Bonhams' breach of fiduciary duty and constructive fraud claims are merely duplicative of their FLSA claim and should be dismissed.

## IV. FIFTH CAUSE OF ACTION – CONVERSION

In their fifth cause of action, the Bonhams have alleged that Defendants' "failure to accurately characterize and report the Bonhams' wages and employment status to the IRS caused the Bonhams to incur higher tax liability and suffer other damages." Compl. ¶ 99. More specifically, in the factual allegations section of the Complaint, the Bonhams allege that after Defendants changed Mr. Bonham's status to an independent contractor in September 2009, he incurred higher tax liability for 2009 because of that alleged mischaracterization. *See* Compl. ¶¶ 59-60.

Although this issue has not yet been addressed by the Fourth Circuit, numerous other courts, including the Third and Eleventh Circuits, have held that a claim for misclassification of independent contractor status (and the resulting employer's share of Social Security and Medicare ("FICA") taxes being born by the individual), whether brought via a claim under FICA or a recast state law claim, is not a cognizable claim and is subject to dismissal. *See, e.g., Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59 (3d Cir. 2008) (holding that FICA did not create private right of action and dismissing state law unjust enrichment claim); *McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718 (11th Cir. 2002) (holding that no private right of action exists under FICA for alleged misclassification of independent contractors); *Glanville v. Dupar, Inc.*, 2010 WL 2991407 (S.D. Tex. July 20, 2010) (granting Rule 12(b)(6) motion to

1199296

dismiss FICA and related state law breach of fiduciary duty and negligent misrepresentation claims); *Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3738095 (M.D. Tenn. Nov. 4, 2009) (dismissing unjust enrichment and conversion claims based on alleged overpayment of FICA taxes due to being misclassified as independent contractor). Instead, the exclusive remedy for such misclassification is under I.R.C. § 7422 (26 U.S.C. § 7422), which places restrictions on tax refunds and preempts state law claims. Section 7422(a) states as follows:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Given that the Bonhams' conversion cause of action essentially amounts to a claim for misclassification and a resultant increase in FICA tax liability, it should be dismissed based on the reasoning of the above-cited decisions.

## V. SIXTH AND SEVENTH CAUSES OF ACTION – FRAUD AND NEGLIGENT MISREPRESENTATION

In their sixth and seventh causes of action, the Bonhams have asserted claims for fraud and negligent misrepresentation based on Defendants allowing certain allegedly violent teenagers to live in the same house as the Bonhams without their knowledge and concealing information about these individuals' violent histories from them. The factual allegations of the Bonhams' Complaint, however, affirmatively reveal that neither of these claims are actionable.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity..." In the context of fraudulent concealment or fraud by omission, a plaintiff is

required to allege the following elements with particularity: "(1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance." *Breeden v. Richmond Community College*, 171 F.R.D. 189, 195, 198 (M.D.N.C. 1997) (granting Rule 12(b)(6) motion to dismiss, as complaint contained "only general, vague allegations of fraud by omission, with most of the allegations being legal conclusions rather than specific statements of fact").

The Bonhams' allegations of fraud come well short of satisfying Rule 9(b)'s standard of particularity, and actually affirmatively demonstrate that Bonhams did not reasonably rely on any omission by Defendants. First, knowing that they were going to work at a boarding school for "troubled teens" (Compl. ¶ 11), the Bonhams have failed to allege the source of any duty owed by the Defendants to communicate particular individuals' violent histories or tendencies. Second, they have alleged no facts establishing when, during their one and one-half year employment period (October 2008 – March 2010), the fraudulent omissions occurred. Third, they have failed to identify the role of specific persons at Wolf Creek involved in the alleged concealments, instead lumping together their allegations against "Defendants." Fourth, they have failed to allege what the Defendants gained by withholding such information. Finally, and most importantly, the Bonhams have failed to set forth specific factual allegations showing how they reasonably and detrimentally relied on these alleged concealments. Once again, in conclusory

form, they merely allege that they "reasonably and detrimentally relied on Defendants not to place violent individuals in the same home as their family without their knowledge." Compl. ¶ 110. But the factual allegations that *are* included actually show the complete opposite.

The Bonhams were hired in October 2008 (Compl. ¶ 38), and allege that "[f]ights broke out between the boys on a *daily basis*." Compl. ¶ 64 (emphasis added). According to the Complaint, they "lived and worked in a dangerous environment." *Id.* The Bonhams further allege that they "*regularly complained* to the Jones family about the violent boys, but they continued to allow boys with a violent past to live in their home without the Bonhams' knowledge." Compl. ¶ 65 (emphasis added). Paragraph 65 of the Complaint (and the fraud allegations as a whole) represents a contradiction in terms and demonstrates no possible reliance by the Bonhams: they allegedly experienced violence and even complained about it, but somehow simultaneously had no knowledge of it. The fraud claim should accordingly be dismissed.

Although there is some disagreement within the Fourth Circuit as to whether a claim for negligent misrepresentation also must satisfy the heightened pleading requirements under Rule 9(b), *see Baltimore County v. Cigna Healthcare*, 2007 WL 1655461 (4th Cir. June 5, 2007), this claim should nevertheless also be dismissed due to the same lack of reasonable and detrimental reliance, as discussed immediately above. Additionally, courts have found that omissions cannot form the basis for the tort of negligent misrepresentation under North Carolina law. *See, e.g., Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F.Supp.2d 386, 415 n. 13 (M.D.N.C. 2003); *Breeden*, 171 F.R.D. at 202 ("Plaintiff has alleged a negligent omission, not a negligent misrepresentation claim. The Court has not been cited to, nor has it located, a case wherein North Carolina has extended the tort of negligent misrepresentation to cover 'negligent omissions,' much less to an employer-employee relationship. Other states when presented with

1199296.1

claims of 'negligent omissions' have rejected it"). The Bonhams' negligent misrepresentation claim, which is based upon omissions, should be dismissed.

## VI. EIGHTH CAUSE OF ACTION – NEGLIGENCE

Although it is not entirely clear from the Complaint what specific conduct the Bonhams are complaining about in connection with their negligence claim, it appears to be based upon an alleged duty to (1) "correctly characterize and report the Bonhams' wages and employment status," and (2) "to keep a safe working environment." Compl. ¶ 119. To the extent this claim is based on conduct involving the Bonhams' wages and/or employment status, the claim should be dismissed for the reasons set forth in Sections III and IV above, as it is either a recast of their FLSA overtime time (which would make it preempted under *Anderson*) or an additional claim based on Defendants' alleged misclassification of the Bonhams as independent contractors (which is not actionable). To the extent the claim is based on the Defendants' alleged failure to keep a safe working environment, the entirety of those allegations in the Complaint deal with the Defendants concealing the alleged violent nature of some of the individuals who lived in the Bonhams' assigned house, making it duplicative of the negligent misrepresentation claim discussed above.

## VII. NINTH CAUSE OF ACTION – PIERCING THE CORPORATE VEIL

Piercing the corporate veil is not a cause of action in and of itself, but rather an equitable doctrine that "allows a plaintiff to impose legal liability for a corporation's obligations upon some other individual that controls and dominates the corporation." *Bogopa Service Corp. v. Shulga*, 2009 WL 322141, at *2 (W.D.N.C. Feb. 10, 2009) (internal citation omitted). It is Defendants' position in the instant Motion to Dismiss that all of the Bonhams' ancillary state law claims should be dismissed as to all Defendants, with the only remaining claim being the FLSA

1199296.1

overtime claim. It is well established that, under certain conditions, individuals may be subjected to liability for unpaid wages under the FLSA. *See, e.g., Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir.1989) (holding individual was properly sued as an "employer" responsible for complying with the FLSA because "he hired and directed the employees who worked for the enterprise"). Accordingly, it is unnecessary for the Bonhams to rely on any sort of veil-piercing remedy, as such would be merely duplicative of their FLSA claim. *See, e.g., In re Shelby Yarn Co.,* 306 B.R. 523, 537 (W.D.N.C. 2004) (noting that "it may be unnecessary, based on the statutory definitions of employer, to even reach the issue of veil-piercing" in addressing WARN Act, ERISA, and NCWHA claims).

## VIII. TENTH AND ELEVENTH CAUSES OF ACTION – INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In order to state a claim for intentional infliction of emotional distress, the Bonhams must show (1) that Defendants engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct did in fact cause severe emotional distress. *See Thomas v. Northern Telecom, Inc.,* 157 F.Supp.2d 627, 634-35 (M.D.N.C. 2000) (citing *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22 (1992)). Whether the alleged conduct is sufficiently extreme and outrageous to support a claim of intentional infliction of emotional distress is a question of law. *Id.* at 635. It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress." *Id.* (citing *Atkins v. USF Dugan, Inc.,* 106 F.Supp.2d 799 (M.D.N.C. 1999); *Wilson v. Southern Nat'l Bank,* 900 F.Supp. 803, 811-12 (W.D.N.C. 1995)).

Here, it is entirely unclear exactly what conduct the Bonhams are alleging was extreme and outrageous, as they merely allege that "Defendants acted extremely and outrageously and

beyond all possible bounds of decency by their actions alleged herein." Compl. ¶ 130. At most, from the other allegations in the Complaint, Defendants allegedly misclassified the Bonhams as independent contractors, failed to pay them overtime wages, and concealed information about certain individuals' violent histories—actions that are insufficient as a matter of law to establish extreme and outrageous conduct. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-23 (1986) (affirming summary judgment on two plaintiffs' claims for intentional infliction of emotional distress, with the first involving allegations of a supervisor screaming profanities, calling the plaintiff names, interfering with her work, and throwing things at her, and with the second involving a refusal to grant the plaintiff pregnancy leave, directing her to carry objects weighing more than ten pounds even though she was pregnant, and refusing her to leave work to go the hospital and then firing her when she left without permission). Accordingly, the Bonhams' intentional infliction of emotional distress claim should be dismissed.

With respect to the Bonhams' claim for negligent infliction of emotional distress, aside from their allegations surrounding their negligent misrepresentation claim discussed above (which is not actionable), their Complaint has only asserted intentional conduct by Defendants. Therefore, the Bonhams have failed to state a claim for *negligent* infliction of emotional distress. *See, e.g., Thomas*, 157 F.Supp.2d at 637; *Barbier v. Durham County Bd. of Educ.*, 225 F.Supp.2d 617, 631 (M.D.N.C. 2002) (dismissing negligent infliction of emotional distress claim against individual defendant where complaint consisted "solely of allegations of intentional sexual harassment and not negligent acts" by the individual defendant). This claim should also be dismissed.

## IX. TWELFTH CAUSE OF ACTION – UNFAIR AND DECEPTIVE TRADE PRACTICES

In order to state a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.* ("UDTPA"), a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *See Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991). However, the UDTPA "does not normally extend to run-of-the-mill employment disputes." *Dalton*, 353 N.C. App. at 656, 548 S.E.2d at 710 (citing *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991)).

The rationale behind this general rule is that employer-employee disputes are not sufficiently "in or affecting commerce" to satisfy the second element of a UDTPA claim. *See Durling v. King*, 146 N.C. App. 483, 489, 554 S.E.2d 1, 4-5 (2001) (finding that withholding of commissions had no impact beyond the parties' employment relationships and holding no violation of N.C.G.S. § 75-1.1). Here, the Bonhams have alleged no special circumstances[1] to take their alleged relationship with Defendants outside the scope of the general rule barring UDTPA claims in the employer-employee context. Accordingly, their claim should be dismissed.

## X. PUNITIVE DAMAGES

This Court has noted that "[a]s a matter of state law, punitive damages is not a cause of action, but is instead a remedy available in very limited circumstances." *McMahon v. Synthron,*

---

[1] As the Fourth Circuit noted in a separate part of its opinion in *Anderson*, "[w]hen the Supreme Court of North Carolina has allowed UDTPA claims in employer-employee disputes, it has been in circumstances not present in this case: for example, claims brought by employers against employees who engaged in conduct falling squarely within the UDTPA's intended reach. *See Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308, 311-12 (1999) authorizing UDTPA claim based on self-dealing against purchasing agent who sold computer parts and services to employer at inflated prices); *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375, 388-80 (1988) (recognizing that UDTPA may have been contravened with respect to former employee's violation of covenant not to compete)." 508 F.3d at 190-91.

*Inc.*, 2006 WL 149054, at *5 (W.D.N.C. Jan. 18, 2006). Although the Bonhams have not labeled their punitive damages allegations as a cause of action, there is no basis for punitive damages to be assessed against Defendants, as any underlying claims that could be the basis for punitive damages should be dismissed for the reasons discussed above. *See Combs & Associates, Inc. v. Kennedy*, 147 N.C. App. 362, 374, 555 S.E.2d 634 (2001) (stating that "punitive damages may be awarded only if a claimant proves that the defendant is *liable for compensatory damages* and that the defendant is guilty of fraud, malice, or willful or wanton conduct") (citing N.C.G.S. § 1D-15(a) (emphasis added).

## CONCLUSION

For the reasons set forth above, each of the Bonhams' state law claims fail to state a claim upon which relief can be granted. Accordingly, Defendants respectfully request that this Court grant their partial Rule 12(b)(6) Motion to Dismiss.

Respectfully submitted, this the 25th day of October, 2010.

**/s/Jonathan W. Yarbrough**
N.C. State Bar No. 21316
Email: jyarbrough@constangy.com
**/s/William J. McMahon, IV**
William J. McMahon, IV
N.C. State Bar No. 34097
Email: bmcmahon@constangy.com
CONSTANGY, BROOKS & SMITH, LLP
80 Peachtree Road, Suite 208
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
ATTORNEYS FOR DEFENDANTS

# CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2010, I electronically filed **BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Robert C. Carpenter (rccarpenter@jchlawfirm.com) and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

**/s/William J. McMahon, IV**
William J. McMahon, IV
N.C. State Bar No. 34097
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112
bmcmahon@constangy.com

1199296.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### FILE NO: 1:10-CV-190

| | | |
|---|---|---|
| JOHN BONHAM, CHARLYNN BONHAM, on behalf of themselves and others similarly situated, | ) ) ) | |
|    Plaintiffs, | ) | **MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| v. | ) ) ) | |
| WOLF CREEK ACADEMY, ABOUT FACE MINISTRIES, PATRICIA A. JONES, JAMES E. JONES, JEREMEY C. JONES, | ) ) ) | |
|    Defendants. | ) | |

NOW COMES Plaintiffs, by and through the undersigned counsel, pursuant to Rule 12 of the Federal Rules of Civil Procedure and Local Rule 7.1, and respectively submits this memorandum of law responding to Defendants' Partial Motion to Dismiss.

## SUMMARY OF ARGUMENT

Plaintiffs' North Carolina Wage and Hour Act ("NCWHA") claim cannot be dismissed because there has been no final determination regarding the applicability of the Fair Labor Standards Act ("FLSA"). Similar reasoning prevents the dismissal of Plaintiffs' piercing the corporate veil claim.

Plaintiffs' have alleged facts to support every element of fraud in North Carolina. The fraud claim also satisfies the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure because the complaint describes the particular parties to the misrepresentation, when the misrepresentation occurred and what Defendants gained by the misrepresentation. Additionally, Defendants were under a duty to speak because they took affirmative steps to

conceal information from the Bonhams.  Defendants' misrepresentations, if proven negligent rather than purposeful, subject them to liability for negligent misrepresentation.

The negligence claim is not duplicative of the negligent misrepresentation claim because the negligence claim, *inter alia*, seeks recovery for negligently maintaining a dangerous working environment and the negligent misrepresentation claim concerns misrepresentations regarding that dangerous working environment.

Defendants acted extremely and outrageously when they exposed the Bonhams and their children to serious physical harm.

Finally, Defendants deceptive acts were in or affected commerce because their misrepresentations were made to the Bonhams and potential clients in interstate commerce.

## MOTION TO DISMISS STANDARD OF REVIEW

Rule 8 of the Federal Rules of Procedure describes the necessary content of a complaint. A complaint needs to only include a jurisdictional statement, a demand for relief and õa short and plain statement of the claim showing that the pleader is entitled to relief.ö  Rule 8(a) of the Federal Rules of Civil Procedure (2009).  õPleadings must be construed so as to do justice.ö Rule 8(e) of the Federal Rules of Civil Procedure (2009).

In determining whether the claimant complied with Rule 8, the court must construe the factual allegations in the nonmoving party's favor and treat them as true.  *In re Caremerica, Inc.*, 2009 WL 2227212 (4th Cir. 2009).  The Court must view the allegations in õthe light most favorable to the plaintiff.ö *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

2

allegations in the complaint." *Id.* at 563. A complaint "does not require ̶detailed factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*. The factual allegations must be taken as true and make the legal allegations "plausible." *Id*. Plausibility means more than "mere possibility." *Id*. at 1950. In short, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## ARGUMENT

**A. Plaintiffs' alternative claim under the NCWHA cannot be dismissed until this Court definitively determines whether the FLSA controls.**

The Court cannot dismiss Plaintiffs' North Carolina Wage and Hour Act ("NCWHA") claim. N.C. Gen. Stat. § 95-25.14(a)(1) states that the NCWHA does not apply when the employee is "employed in an enterprise engaged in commerce or in the production of good for commerce." N.C. Gen. Stat. § 95-25.14(a)(1) (2010); *Spencer v. Hyde County*, 959 F. Supp. 721, 727-28 (E.D.N.C. 1997). Defendants admitted that they were such an enterprise and covered by the FLSA "for purposes of [the motion to dismiss]." They therefore reserved the right to later challenge the FLSA's applicability. The Court has not ruled on whether the FLSA applies. If the Court later decides that the FLSA is inapplicable, then the NCWHA provides Plaintiffs only avenue of relief for their wage claim. This Court, like the Court in *Spencer*, should therefore not dismiss the NCWHA claim until the Court definitively finds that the FLSA applies. See *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009) (both FLSA and NCWHA claims survived summary judgment).

**B. Causes of action three, four and five appear to be preempted by federal tax law.**

Mr. Bonham's claims for breach of fiduciary duty, constructive fraud and conversion seek relief for the improper, inaccurate classification and reporting of Mr. Bonham's wages and

3

employment status.  Mr. Bonham reluctantly concedes that 26 U.S.C. § 7422 appears to preempt these state law claims meaning they are subject to dismissal.

**C. The facts contained in the Complaint fully support the fraud and negligent misrepresentation causes of action.**

The Bonhams have alleged a plausible fraud claim.  The elements of fraud are well defined in North Carolina:  (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) that does in fact deceive; (5) resulting in damage to the injured party.  *Latta v. Rainey*, ___ N.C. App. ___ 689 S.E.2d 898, 908 (2010).  The second and third elements, the "scienter" elements, are issues of fact for the jury.  *Id*.  The Complaint also alleges facts to support scienter.  ¶¶ 14-16, 18-22, 33, 35-36, 39, 55, 58, 60, 62, 69, 70, 109.  The fifth element is not contested as the Bonhams have sufficiently alleged damages.  ¶¶ 67, 74.  The dispositive question becomes whether the facts in the Complaint plausibly support the false representation and reasonable reliance elements of fraud.  The Complaint does support these elements.

Defendants made false and reckless representations to and concealed material facts from the Bonhams.  Making a statement with reckless indifference to its truth satisfies the first element of fraud.  *Meekins v. Box*, 152, N.C. App. 379, 386-87, 567 S.E.2d 422, 427 (2002).  Defendants represented that they do not allow violent teenagers into the homes.  ¶ 63.  The Jones family, specifically Mrs. Jones, withheld the full extent of the student's violent tendencies from the Bonhams.  ¶¶ 63, 69.  Mrs. Jones, in fact, falsely and with reckless indifference told Mrs. Bonham that DH's mom was a "little crazy."  ¶ 69.  These representations and concealments are specifically plead in the Complaint.  The first element of fraud is therefore sufficiently pled.

The Bonhams reasonably and detrimentally relied on the Jones family's representations and concealments regarding the violent tendencies of the teens and DH in particular.  Even

4

though the Bonhams worked with troubled teens who often fought, they did not believe any teen would consider killing their daughter. ¶ 68. They reasonably believed that Defendants, who screened the teens before they enrolled, would not place such an individual in their home. Defendants' assurances regarding the safety of the home reinforced this belief. ¶¶ 63, 69. The Bonhams' reliance on this belief detrimentally affected their children's safety and their own mental health. ¶ 68. The Bonhams therefore reasonably and detrimentally relied on the Jones family's representations and concealments regarding the safety of their home.

The Bonhams have therefore alleged plausible facts to support fraud. Defendants, however, argue that Plaintiffs failed to comply with Rule 9(d) of the Federal Rules of Civil Procedure. Specifically, Defendants claim that Plaintiffs did not allege a duty to speak, provide the time frames for the omissions, identify the specific persons involved, allege what was gained by the omission and explain how Plaintiffs reasonably relied on Defendants' misrepresentations. Defendants' argument is not supported by the allegations in the Complaint.

Plaintiffs have alleged fraud with sufficient particularity. The explanation for the reasonable reliance element is outlined above. Defendants' gain was the retention of two productive and hard-working employees who would have left had they known the full extent of the teens' potential for violence. ¶¶ 29-32, 34, 72. The specific persons involved in the fraud were the Jones family and Mrs. Jones. ¶¶ 63, 69-70. The time frames are either specifically alleged or easily implied. For example, the Bonhams obtained DH's letter on February, 2010, and resigned on March 1, 2010. ¶¶ 68, 72. Finally, the Bonhams alleged facts supporting a duty to speak by explaining Mrs. Jones' attempts to conceal DH's violent tendencies from the Bonhams. ¶¶ 69-70. *Hardin, v. KCS Intern., Inc.*, 682 S.E.2d 726, 733 (2009) (someone is

5

under a duty to speak when they take õaffirmative steps to conceal material facts from the otherö).  Plaintiffs therefore complied with the particularity requirements of Rule 9(b).

Defendantsø attack on the negligent misrepresentation claim fails for similar reasons. They argue that the facts do not support reasonable reliance and there is no claim for negligent omission in North Carolina.  Plaintiffs covered the reasonable and detrimental reliance issue above.  Additionally, the above-cited misrepresentations of Defendants, rather than concealments, would satisfy the elements of negligent misrepresentation.  Therefore, the negligent misrepresentation claim cannot be dismissed.

### D. Plaintiffs negligence claim is not wholly preempted by federal law or duplicative of other claims.

The Bonhamsø negligence claim cannot be dismissed.  Defendants negligently characterized the Bonhamsø wage and employment status and failed to keep a safe working environment.  ¶ 119.  The first negligent act is preempted by federal tax law.  26 U.S.C. § 7422. Defendantsø failure to keep a safe working environment, however, is not preempted.  The claim is also not duplicative of the negligent misrepresentation claim.

The negligence and negligent misrepresentation claims are two distinct claims.  The negligence claim seeks recovery for Defendants general failure to maintain a safe working environment.  ¶¶ 64-65.  The negligent misrepresentation claim concerns the misrepresentations Defendants made to the Bonhams.  ¶ 63, 69-70.  The elements are also different for each claim. These distinctions preclude their dismissal.

### E. Plaintiffs may pierce the corporate veil if the Court finds that the Jones family cannot be held individually liable under the FLSA.

The piercing the corporate veil claim should not be dismissed for the same reasons the NCWHA claim cannot be dismissed.  The FLSA allows Plaintiffs to recover against the Jones

family individually.  There is an open question as to whether the NCWHA subjects employers to individual liability since neither North Carolina nor the Fourth Circuit has addressed the issue. *But see*, *Garcia*, *supra* (found that the NCWHA does allow plaintiffs to recover against defendants in their individual capacity).  The piercing the corporate veil doctrine may be Plaintiffs only remedy against the Jones family individually if the FLSA is found not to apply to the Jones family.  Therefore, Plaintiffsø ability to pierce the corporate veil should be preserved until this Court decides whether the Jones family can be held individually liable under the FLSA.

**F.  Defendants' conduct was extreme and outrageous because it placed the Bonhams and their children in serious danger of physical harm.**

Defendants acted extremely and outrageously when they endangered the safety of the Bonhams and their children.  The elements for intentional infliction of emotional distress (õIIEDö) are õ(1) defendants engaged in extreme and outrageous conduct and (2) that conduct was intended to and did in fact cause (3) severe emotional distress.ö  *Watson v. Dixon*, 130 N.C. App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998), *aff'd  Watson v. Dixon*, 352 N.C. 343, 532 S.E.2d 175 (2000) (cruel practical jokes, sexually harassing behavior and veiled threats to personal safety of co-employee was extreme and outrageous).  Extreme and outrageous conduct is conduct õso outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.ö  *Proctor v. Johnson Body Shop, Inc.*, 603 S.E.2d 407 (2004) (IIED claim against co-employees should have survived summary judgment) (unpublished).  The Court is only to decide whether the conduct õmay be reasonably regarding as extreme and outrageous.ö *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 412-13, 473 S.E.2d 38, 41 (1996) (employer held liable for IIED).  The jury ultimately determines whether the defendant acted extremely and outrageously.  *Id.*  Defendantsø conduct here went beyond all possible bounds of decency.

7

Placing volatile teenagers who contemplated killing the Bonhamsø daughter in the same house as their daughter without the Bonhamsø knowledge was beyond the bounds of decency The Jones family placed violent teenagers in the Bonhamsø home without telling them. ¶ 63. This created a dangerous work environment. ¶ 64. The Jones family continued to allow these violent individuals in the house despite the Bonhamsø protests. ¶ 65. The Jones family also threatened to make life difficult for anyone who left Wolf Creek or complained to others about Wolf Creek. ¶ 67. Finally, the Jones family allowed an individual who referenced killing their daughter to live with the Bonhams. ¶¶ 68-71. A jury would reasonably regard this behavior as extreme and outrageous. See e.g. *Hogan v. Forsyth Country Club Company*, 79 N.C. App. 483, 340 S.E.2d 116 (1986) (sexually harassing conduct was extreme and outrageous), *Dixon v. Stewart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987) (non-sexual harassment and ridicule of employee supported a claim for IIED).

**G. Defendants fraudulent actions were in and affected commerce meaning the UDTPA applies despite the employer-employee relationship between the parties.**

Special circumstances require the application of N.C. Gen. Stat. § 75-1.1. Defendants claim that their actions did not affect commerce. However, their actions, particularly their fraudulent actions, were made in the scope of commerce. See *Jones v. Harrelson and Smith Contractors, LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008) (if a plaintiff proves fraud, then they sufficiently establish an UDTPA claim). In order to attract parents to the school, Defendants falsely advertised the number of students in each cabin. ¶ 24. They also advertised that they did not allow violent students into the homes. ¶ 63. These misrepresentations affected commerce and had a detrimental effect on the Bonhamsø working conditions and emotional well-being. ¶¶ 68-71. Plaintiffs have therefore sufficiently alleged a claim under N.C. Gen. Stat. § 75-1.1.

**<u>CONCLUSION</u>**

For all the above-stated reasons, the Court should DENY Defendantsø Partial Motion to Dismiss.

This the 24th day of November, 2010.

THE JOHN C. HUNTER LAW FIRM, PLLC

s/ Robert C. Carpenter_____
N.C. Bar No. 36672
One North Pack Square, Suite 418
Asheville, NC  28801
(828) 281-1940
(828) 281-9069-facsimile
rccarpenter@jchlawfirm.com
*Attorney for Plaintiffs*

9

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel for Plaintiffs hereby certifies that he served the foregoing using the CM/ECF system which will send notification of such filing to the following individuals:

Jonathan W. Yarbrough
CONSTANGY BROOKS & SMITH, LLP
80 Peachtree Road, Suite 208
Asheville, NC 28803
Telephone: 828.277.5137
Facsimile:  828.277.5138
jyarbrough@constangy.com
*Attorney for Defendant*

William J. McMahon, IV
CONSTANGY, BROOKS & SMITH, LLP
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112
bmcmahon@constangy.com
*Attorney for Defendant*

This the 24th day of November, 2010.

**THE JOHN C. HUNTER LAW FIRM, PLLC**

s/ Robert C. Carpenter_____
N.C. Bar No. 36672
One North Pack Square, Suite 418
Asheville, NC  28801
(828) 281-1940
(828) 281-9069-facsimile
rccarpenter@jchlawfirm.com
*Attorney for Plaintiffs*

Unpublished Disposition

603 S.E.2d 407

NOTE: THIS OPINION WILL NOT BE PUBLISHED IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

Court of Appeals of North Carolina.

Bobby Ray PROCTOR, Plaintiff-Appellant,

v.

JOHNSON BODY SHOP, INC., Lemmuel O. Johnson, Jr., Matt Brown, Mark Yates, Derek Wells, Roger Fowler, Chris Warren and David Mann, Defendants-Appellees.

No. COA03-827.    Sept. 21, 2004.

**Opinion**

 *1  Appeal by plaintiff from order entered 16 January 2003 by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County. Heard in the Court of Appeals 1 April 2004.

**Attorneys and Law Firms**

Hollowell, Mitchell, Peacock & Von Hagen, P.A., by Joseph T. Copeland, for plaintiff-appellant.

Adkins & Flowers, P.A., by Philip S. Adkins, for defendants-appellees.

McGEE, Judge.

Bobby Ray Proctor (plaintiff) filed a complaint alleging claims of intentional infliction of emotional distress and negligent infliction of emotional distress as a result of ridicule and harassment by Mark Yates, Derek Wells, Roger Fowler, Chris Warren and David Mann (collectively employee defendants).

Plaintiff also alleged that Johnson Body Shop, Inc. (Johnson Body Shop), Lemmuel O. Johnson, Jr. (Johnson), and Matt Brown (Brown) (collectively employer defendants) failed to stop the complained of conduct, instead expressly approving and ratifying it. Plaintiff alleged that the actions of employer defendants constituted negligent hiring, retention, and supervision. In an answer and counterclaim filed 24 January 2002, all defendants moved to dismiss plaintiff's complaint pursuant to N.C. Gen.Stat. § 1A1, Rule 12(b)(6). In addition, both Johnson Body Shop and Brown asserted counterclaims against plaintiff. Plaintiff replied to these counterclaims on 28 March 2002. Defendants moved for summary judgment in a motion dated 25 November 2002. In an order filed 16 January 2003, the trial court granted the motion by all defendants for summary judgment and dismissed plaintiff's complaint. The trial court further granted summary judgment in favor of Johnson Body Shop against plaintiff in the amount of $527.61 and in favor of Brown against plaintiff in the amount of $5,000.00. Plaintiff appeals.

Plaintiff was employed as a technician by Johnson Body Shop from 1997 until 1999 and again from January 2000 until July 2001. Plaintiff alleged that during his second tenure at Johnson Body Shop he was "subjected to extreme and outrageous ridicule and harassment by his co-workers" and that employer defendants did nothing to stop this ridicule and harassment. In addition, plaintiff named Johnson Body Shop, Johnson, and Brown as defendants under the theory of respondeat superior. In his brief, plaintiff notes multiple events of ridicule and harassment by employee defendants, including, but not limited to, numerous practical jokes, writings, photographs, songs, poems, and signs ridiculing plaintiff. In his affidavit, plaintiff testified that this harassment resulted in his hospitalization and treatment for major depression and suicidal ideations. Plaintiff also stated in his affidavit that he complained to both Brown and Johnson on numerous occasions about the ridicule and harassment and that both Brown and Johnson observed much of the complained of conduct firsthand. However, the harassment never ceased and Brown and Johnson never disciplined or terminated any employee defendants.

Plaintiff argues the trial court erred in finding that there was no genuine issue of material fact as to his claims. N.C. Gen.Stat. § 1A-1, Rule 56(c) (2003) provides that summary judgment is appropriate when the evidence submitted by the parties presents "no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "A party moving for summary judgment satisfies its burden of proof (1) by showing an essential element of the opposing party's claim is nonexistent or cannot be proven, or (2) by showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." Belcher v. Fleetwood Enters., Inc., 162 N.C.App. 80, 84, 590 S.E.2d 15, 18 (2004). The trial court must view the evidence in a light most favorable to the non-moving party. Roumillat v. Simplistic Enterprises, Inc., 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

**I. Intentional Infliction of Emotional Distress**

Case 5:13-cv-00715-BO   Document 16-1   Filed 12/23/13   Page 29 of 66
Case 5:10-cv-00190-MR-DLH   Document 117-1   Filed 11/24/10   Page 1 of 4

**\*2** Plaintiff first argues that the trial court erred in granting summary judgment in favor of employee defendants on plaintiff's claim for intentional infliction of emotional distress. In order to prevail on his claim for intentional infliction of emotional distress (IIED), plaintiff must show (1) that defendants engaged in extreme and outrageous conduct and (2) that the conduct was intended to and did in fact cause (3) severe emotional distress. Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). Plaintiff alleged an IIED claim against only employee defendants, not against employer defendants. A plaintiff can recover for the injurious acts of a co-employee without his employer being liable. Pleasant v. Johnson, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985). Our Supreme Court has clearly stated that "an injured worker may maintain a tort action against a co-employee for intentional injury[,]" and "the Workers' Compensation Act does not preclude a suit against a co-employee for intentional torts." Id. For the reasons stated below, we hold that employee defendants in this case can be held liable for the intentional torts alleged by plaintiff even in the absence of liability on behalf of employer defendants.

The first element of an IIED claim of whether conduct is sufficiently extreme and outrageous to support a claim is a question of law for the trial court. Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 490, 340 S.E.2d 116, 121, disc. review denied, 317 N.C. 334, 346 S.E.2d 140 (1986). "However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability." Hogan, 79 N.C.App. at 491, 340 S.E.2d at 121. In the case before this Court, the trial court found as a matter of law that the conduct of employee defendants was not sufficiently extreme and outrageous to support an IIED claim. For the reasons stated below, we disagree.

To meet the standard of extreme and outrageous conduct, the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]' " Id. at 493, 340 S.E.2d at 123 (quoting Restatement (Second) of Torts § 46 Comment (d) (1965)). We note that with respect to extreme and outrageous conduct, " 'liability clearly does not extend to mere insults, indignities, [and] threats.' " Hogan, 79 N.C.App. at 493, 340 S.E.2d at 123) (quoting Restatement (Second) of Torts, § 46 comment (d)). Rather, to give rise to a successful claim, the complained of conduct must " 'exceed[ ] all bounds usually

tolerated by decent society' and ... 'cause[ ] mental distress of a very serious kind.' " Stanback v. Stanback, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting Prosser, The Law of Torts, § 12, p. 56 (4th Ed.1971)).

**\*3** We note that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress." Thomas v. Northern Telecom, Inc., 157 F.Supp.2d 627, 635 (M.D.N.C.2000); see Atkins v. USF Dugan, Inc., 106 F.Supp.2d 799, 810-11 (M.D.N.C.1999); Wilson v. Southern Nat. Bank of North Carolina, Inc., 900 F.Supp. 803, 811-12 (W.D.N.C.1995). However, in Phillips v. Restaurant Mgmt. of Carolina, L.P., our Court stated that it could not say, as a matter of law, that a restaurant employee's act of spitting in a plaintiff's food "does not rise to the level of 'extreme and outrageous.' " Phillips, 146 N.C.App. 203, 213, 552 S.E.2d 686, 693, disc. review denied, 355 N.C. 214, 560 S.E.2d 132 (2001). In Phillips, we noted that one jurisdiction has even made it a felony for prisoners to " 'intentionally cause or knowingly cause another to come in contact with blood, semen, saliva, urine or feces.' " Phillips, 146 N.C.App. at 213, 552 S.E.2d at 693 (quoting 19 Pa.C.S.A. § 2703.1).

In the present case, there was evidence that employee defendants spread animal feces on the handles of plaintiff's tools with which plaintiff routinely came into contact. Further, employee defendants telephoned plaintiff's wife "posing as representatives of a funeral home with news of [plaintiff's] death and inquiring about disposal of [plaintiff's] body." There is also ample evidence of employee defendants continually teasing and ridiculing plaintiff. In consideration of the reprehensible nature of the actions of employee defendants, we cannot say as a matter of law that employee defendants' actions do not rise to the level of "extreme and outrageous conduct."

The remaining elements of an IIED claim are whether the conduct was intended to cause severe emotional distress, and whether the conduct did in fact cause severe emotional distress. Waddle, 331 N.C. at 82, 414 S.E.2d at 27. We note that the second element of intent "may also be proven by a showing that the defendant acted with 'reckless indifference to the likelihood' that his or her acts 'will cause severe emotional distress.' " Miller v. Brooks, 123 N.C.App. 20, 29, 472 S.E.2d 350, 356 (1996) (quoting Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)), disc. review denied, 345 N.C. 344, 483 S.E.2d 172 (1997). Regarding the recklessness standard for showing intent, our Supreme Court

Case 5:13-cv-00155-BO  Document 16-1  Filed 12/23/13  Page 30 of 66

has stated that a defendant is liable if he " 'acts recklessly ... in deliberate disregard of a high degree of probability that the emotional distress will follow[.]' " Dickens, 302 N.C. at 449, 276 S.E.2d at 333 (quoting Restatement (Second) of Torts § 46, Comment i (1965)). Here, plaintiff has forecast sufficient evidence of these elements to survive summary judgment.

Regarding the element of intent, plaintiff alleged that employee defendants' conduct was "intended to inflict emotional distress in Plaintiff[.]" Plaintiff testified in his deposition that employee defendants knew he was "softhearted" but they would "start messing with [him], and [he would] ask them to stop and they [wouldn't] and [he would] get upset[.]" Plaintiff further testified in his deposition that employee defendants "knew [he] was easy to upset[.]" Plaintiff also testified that both he and Brown asked employee defendants on numerous occasions to leave plaintiff alone. In fact, plaintiff testified in his affidavit that he "begged and pleaded" with employee defendants to stop harassing him. This testimony demonstrates that employee defendants were aware that the teasing and harassing were upsetting plaintiff, yet they refused to stop bothering plaintiff. This constitutes a forecast of evidence that employee defendants acted with a disregard that plaintiff would suffer emotional distress.

*4 Regarding the third element of emotional distress, plaintiff presented substantial evidence of hospitalization, treatment, medication and psychological evaluation to support his contention that he suffered severe emotional distress.

Plaintiff brought forth evidence regarding all three elements of an IIED claim. Accordingly, we conclude that the trial court erred in granting summary judgment in favor of employee defendants and this portion of the trial court's order is reversed.

## II. Negligent Infliction of Emotional Distress

Plaintiff next argues that the trial court erred in granting summary judgment in favor of employee defendants on plaintiff's claim for negligent infliction of emotional distress (NIED). For the reasons stated below, we disagree.

In order to succeed on his claim of NIED, plaintiff must prove (1) that employee defendants negligently engaged in conduct, (2) that it was reasonably foreseeable that their conduct would cause plaintiff severe emotional distress, and (3) that the conduct did in fact cause plaintiff severe emotional distress. Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In addressing plaintiff's argument, we find

Guthrie v. Conroy, 152 N.C.App. 15, 567 S.E.2d 403 (2002) controlling. Our Court in Guthrie stated that "[n]egligence is the breach of a legal duty owed by defendant that proximately causes injury to plaintiff." Guthrie, 152 N.C.App. at 25, 567 S.E.2d at 410. Further, " '[i]n order to establish actionable negligence, a plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligen[t] breach of such duty was the proximate cause of the injury.' " Id. at 25, 567 S.E.2d at 410-11 (quoting Gordon v. Garner, 127 N.C.App. 649, 660-61, 493 S.E.2d 58, 65 (1997), disc. review denied, 347 N.C. 670, 500 S.E .2d 86 (1998)).

In Guthrie, the plaintiff failed to allege any duty owed by the defendant to the plaintiff and failed to present any evidence showing that the defendant breached any duty of care owed to the plaintiff. Guthrie, 152 N.C.App. at 25, 567 S.E.2d at 411. Our Court therefore held that "[a]bsent a breach of duty of care, plaintiff's suit against [the defendant] for NIED cannot be maintained" and concluded that summary judgment was proper. Id. at 25-26, 567 S.E.2d at 411. Similarly, in the case before our Court, plaintiff failed to allege and failed to present any evidence that employee defendants owed any duty to plaintiff. Accordingly, as in Guthrie, we conclude that the trial court did not err in granting summary judgment in favor of employee defendants on plaintiff's NIED claim.

We note that plaintiff also argues that employer defendants are liable for IIED and NIED under the doctrine of respondeat superior . An employer can be liable where "(1) the employer expressly authorizes the employee's act; (2) the tort is committed by the employee in the scope of employment and in furtherance of the employer's business; or (3) the employer ratifies the employee's tortious conduct." Denning-Boyles v. WCES, Inc., 123 N.C.App. 409, 414, 473 S.E.2d 38, 41 (1996). Thus, for an employer to be liable under the theory of respondeat superior, a plaintiff must show that an employer's conduct fits within one of the above categories. Id. at 414, 473 S.E.2d at 42. In the case before us, plaintiff only argues that employer defendants are liable based upon ratification of employee defendants' conduct. Regarding Brown, plaintiff presented sufficient evidence supporting his contention that Brown knew that employee defendants were ridiculing plaintiff. However, plaintiff failed to present evidence that Brown ratified the acts of employee defendants. In fact, plaintiff testified multiple times in his deposition that Brown met with employee defendants and told them to stop harassing plaintiff. Further, when asked specifically whether Brown ratified employee defendants' conduct, plaintiff testified that Brown "didn't approve of [employee defendants] doing what

they [were] doing." Regarding Johnson, plaintiff testified repeatedly in his deposition that he complained only to Brown and not to Johnson about the harassment. Thus, there is no evidence that Johnson was aware of the harassment and certainly no evidence that Johnson ratified the acts of employee defendants. Accordingly, we hold the trial court did not err in granting summary judgment in favor of employer defendants for IIED and NIED on the theory of respondeat superior.

### III. Negligence Claim against Employer Defendants

**\*5** Plaintiff also argues in his brief that employer defendants were negligent in failing to stop the harassment by employee defendants. This argument is based on plaintiff's allegation in his complaint regarding negligent hiring, retention and supervision on behalf of employer defendants. However, plaintiff's sole assignment of error on appeal states that there were genuine issues of material fact regarding his IIED and NIED claims. Plaintiff did not include negligent hiring, retention and supervision claims in this assignment of error. Accordingly, plaintiff has failed to preserve this portion of his argument for appellate review. See N.C.R.App. P. 10(a) (stating that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal").

Affirmed in part; reversed in part.

Judges CALABRIA and STEELMAN concur.

Report per Rule 30(e).

**Parallel Citations**

603 S.E.2d 407 (Table), 2004 WL 2152186 (N.C.App.)

**End of Document**

© 2010 Thomson Reuters. No claim to original U.S. Government Works.

| | | |
|---|---|---|
| JOHN BONHAM, CHARLYNN BONHHAM, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL** |
| WOLF CREEK ACADEMY, ABOUT FACE MINISTRIES, PATRICIA A. JONES, JAMES E. JONES and JEREMY C. JONES, | ) ) ) ) ) | **MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ARGUMENT

### I.     PLAINTIFFS HAVE ALLEGED AND DEFENDANTS ADMIT THAT WOLFCREEK ACADEMY IS AN ENTERPRISE COVERED UNDER THE FLSA

To be clear, Defendants are admitting that Wolf Creek Academy is an enterprise under 29 U.S.C. § 203(s)(1)(B) for purposes of this action. It certainly was not Defendants' intent from their original Brief to, as stated in Plaintiffs' response, "reserve[] the right to later challenge the FLSA's applicability." While Defendants dispute any liability, and reserve the right to assert any applicable exemptions under the FLSA, it is clear that the FLSA is the appropriate claim for overtime wages and that a claim under the NCWHA cannot be simultaneously maintained.

### II.    WITH RESPECT TO THEIR FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS, PLAINTIFFS' ALLEGATIONS NEGATE ANY REASONABLE OR DETRIMENTAL RELIANCE ON DEFENDANTS

As pointed out in Defendants' initial Brief, Plaintiffs' Complaint contains a contradiction on the element of reasonable and detrimental reliance that forms an insurmountable bar to

recovery under either a fraud or negligent misrepresentation theory. *See* Brief in Support of Defendants' Partial Motion to Dismiss at 8. Although Plaintiffs responded to Defendants' arguments concerning these claims, they tellingly never attempted to address this particular problem and for good reason—the Bonhams voluntarily continued to live in what at least they considered to be a dangerous environment for approximately a year and half of their lives, making it very difficult to argue that were relying on Defendants to tell them anything that they did not already know.

To reiterate, the Bonhams have alleged that over the course of working at Wolf Creek Academy they were (1) aware of fights that broke out on a daily basis (Compl. ¶ 64); (2) feared for their safety and their children's safety (*Id.*); (3) lived and worked in a dangerous environment (*Id.*); and (4) regularly complained to the Jones family about the violent boys. (Compl. ¶ 65) These allegations affirmatively show that the Bonhams had knowledge of the violent tendencies of some of the boys, negating any reliance on Defendants to provide them with this information.

Tacitly admitting that they have not pled reasonable and detrimental reliance with the respect the violent boys as a group, Plaintiffs instead shifted the focus of their fraud and negligent misrepresentation claims to their allegations with respect to "DH." *See* Memorandum of Law in Response to Defendants' Partial Motion to Dismiss at 4-5. This is a notable concession given that the Complaint's allegations center on the allegedly violent boys as a whole, and not DH specifically. *See* Compl. ¶¶ 104-17.

But the allegations with respect to DH (Compl. ¶¶ 68-71) still do not save their claims. When the Bonhams discovered an allegedly threatening letter written by DH, they confronted Defendants with the same and explained that they would quit if DH (who was out of town at the time) was not removed from the house. Compl. ¶ 70. The Bonhams then resigned when DH

returned a few days later, and was allowed back in the house over their objections. Compl. ¶ 71-72. Similar to their knowledge of the boys as a whole, the Bonhams already knew about DH's violent tendencies and had even addressed the issue with Defendants in the past. Compl. ¶ 69. Once again, Plaintiffs simply cannot establish any reasonable and detrimental reliance on Defendants with respect to DH. Additionally, given that the Bonhams resigned upon discovery of the letter and return of DH, they also cannot show any damages from any purported representation or concealment from Defendants with respect to DH.

### III. PLAINTIFFS NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF OTHER CLAIMS THAT CANNOT SURVIVE

With respect to their negligence claim (Eighth Cause of Action), Plaintiffs properly concede that it cannot be based on a "failure to characterize and report the Bonhams' wages and employment status." Compl. ¶ 119. However, Plaintiffs maintain that Defendants' duty to "keep a safe working environment" (Compl. ¶ 119) is somehow distinguishable from the basis for their negligent misrepresentation claim. As explained in Defendants' initial Brief, however, these claims actually overlap because they are based on the same underlying facts.

In any event, even assuming there is a distinction to be made here, the Bonhams have not alleged what harm they have suffered from this alleged negligence, stating in general that "Defendants proximately caused [them] to suffer damages because of their actions alleged herein." Compl. ¶ 121. If these damages are physical in nature, then the Bonhams' exclusive remedy is the North Carolina Workers Compensation Act, N.C.G.S. § 97-1 *et seq.* If the damages are emotional, then the claim also becomes duplicative of Plaintiffs' negligent infliction of emotional distress claim, discussed below. Thus, the damages allegation either means that the negligence claim is not actionable to begin with or in fact is also duplicative of the negligent infliction of emotional distress claim.

## IV. PLAINTIFFS HAVE FAILED TO ALLEGE THAT DEFENDANTS COMMITTED ANY EXTREME AND OUTRAGEOUS CONDUCT

"Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985)). "The behavior must be more than 'mere insults, indignities, threats,…and…plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind.'" *Id.* (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986)).

As described above, the Bonhams' allegations reveal that they knew they were going to work at a "boarding school for troubled teens." Compl. ¶ 11. There is nothing "utterly intolerable" about having to deal with the conflict of allegedly violent boys in such a setting, as evidenced by the fact that the Bonhams themselves tolerated what they now attempt to classify as "extreme and outrageous conduct" for the better part of a year and a half of their lives. Even with respect to DH, the Bonhams were aware of his violent tendencies prior to discovering an alleged threatening letter, which prompted their resignation.

The cases cited in Plaintiffs' response are inapposite, as they address sexual harassment scenarios with unwanted touching (*Watson*), and repeated sexual comments on a daily basis (*Denning-Boyles*). The one decision involving non-sexual harassment relied upon by Plaintiffs[1] involved evidence of defendants spreading animal feces on tools used by the plaintiff and

---

[1] Plaintiffs also cited *Dixon v. Stewart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987). However, that case is not instructive, as it was decided well before the revised pleading standards set forth in *Twombly/Iqbal* and the Court noted that "the specific acts constituting the ridicule and alleged harassment were not alleged." *Id.* at 340, 354 S.E.2d at 759.

making telephone calls to the plaintiff's wife pretending to be funeral home representatives inquiring about arrangements for disposal of the plaintiff's body. *See Proctor v. Johnson Body Shop, Inc.*, 2004 WL 2152186, at \*3 (N.C. App. Sept. 21, 2004). None of these cases are analogous to the facts as alleged in the Complaint.

Overall, Plaintiffs have simply not alleged facts that constitute extreme and outrageous conduct and accordingly neither their intentional or negligent infliction of emotional distress claims can survive.

## V.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS ARISE OUT OF THEIR EMPLOYMENT RELATIONSHIP, SO AN UNFAIR AND DECEPTIVE TRADE PRACTICES CLAIM CANNOT BE MAINTAINED

In an effort to establish the second "in or affecting commerce" element of their UDTPA claim, Plaintiffs confusingly cite a couple of allegations from their Complaint to illustrate that Defendants' advertisements were made in commerce. However, Plaintiffs have cited no facts to show how their employment relationship—the context of all of their claims in this action—was in commerce. Overall, there is nothing about the Bonhams' relationship to Defendants that is any different from any typical employer-employee relationship, and accordingly the UDTPA claim should be dismissed for the reasons set forth in Defendants' initial Brief.

## CONCLUSION

For all of the reasons stated here and in the initial Brief in Support of Defendants' Partial Motion to Dismiss, Defendants respectfully request that this Court grant their partial Rule 12(b)(6) Motion to Dismiss.

1254522.1
5
Case 5:13-cv-00715-BO-DLH Document 16-1 Filed 12/23/13 Page 37 of 66
Case 1:10-cv-00190-PMR-DLH Document 18 Filed 12/06/10 Page 5 of 6

Respectfully submitted, this the 6th day of December, 2010.

**/s/Jonathan W. Yarbrough**
N.C. State Bar No. 21316
Email: jyarbrough@constangy.com
**/s/William J. McMahon, IV**
William J. McMahon, IV
N.C. State Bar No. 34097
Email: bmcmahon@constangy.com
CONSTANGY, BROOKS & SMITH, LLP
80 Peachtree Road, Suite 208
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
ATTORNEYS FOR DEFENDANTS

1254522.1

6

Case 5:13-cv-00715-BO-DLH Document 16-1 Filed 12/23/13 Page 38 of 66
Case 1:10-cv-00190-MR-DLH Document 18 Filed 12/06/10 Page 6 of 6

<strong><u>CERTIFICATE OF SERVICE</u></strong>

I hereby certify that on December 6, 2010, I electronically filed a copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Robert C. Carpenter (rccarpenter@jchlawfirm.com) and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

<u>**/s/William J. McMahon, IV**</u>
William J. McMahon, IV
N.C. State Bar No. 34097
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112
bmcmahon@constangy.com

1254522.1

7

Case 5:13-cv-00715-BO-R-Document 16-1 18 Filed 12/23/13 Page 39 of 66
Case 1:10-cv-00190-PMR-DLH Document 18 Filed 12/06/10 Page 7 of 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:10cv190

| | | |
|---|---|---|
| JOHN BONHAM and CHARLYNN BONHAM, on behalf of themselves and other similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| WOLF CREEK ACADEMY; ABOUT FACE MINISTRIES; PATRICIA A. JONES; JAMES E. JONES; and JEREMY C. JONES, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendants' Partial Motion to Dismiss. In such motion, defendants seek dismissal of all eleven supplemental claims asserted by plaintiff, as well as the demand for punitive damages. Defendants do not seek dismissal of plaintiffs' claim under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 207. Plaintiffs filed their timely Response to Defendants' Partial motion to Dismiss (#17) on November 24, 2010, and defendants timely filed their timely Reply Brief in Support of Defendants' Partial Motion to Dismiss (#18) on December 6, 2010. Having considered defendants' motion and brief, the Complaint, and the briefs in response and reply, the undersigned enters the following findings, conclusions, and recommendation that the Partial Motion to Dismiss be allowed.

Case 5:13-cv-00715-BO-DPdocument 16-1 19 Filed 12/28/13 10 Page 40 of 26

## FINDINGS AND CONCLUSIONS

## I.      Background

Primarily, this action concerns allegedly unpaid wages which plaintiffs contend they earned at a boarding school for troubled teens located in Madison County, North Carolina, run by defendants. Complaint (hereinafter "Compl."), at ¶¶ 1& 11. In particular, plaintiffs contend that defendants failed to pay them and other persons similarly situated overtime pay for their work as house parents. Id., at ¶¶ 1, 3, & 81.

In addition to such federal claim, plaintiffs have also asserted 11 additional claims under North Carolina law. As will be discussed, many of these claims are based on the FLSA claim and all of plaintiffs' supplemental claims concern their 18 months working as house parents at defendants' boarding school for troubled teens. Plaintiffs' supplemental claims are:

(1)     Second Cause of Action: North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.4;

(2)     Third Cause of Action: Breach of Fiduciary Duty;

(3)     Fourth Cause of Action: Constructive Fraud;

(4)     Fifth Cause of Action: Conversion;

(5)     Sixth Cause of Action: Fraud;

(6)     Seventh Cause of Action: Negligent Misrepresentation;

(7)     Eighth Cause of Action: Negligence;

(8)     Ninth Cause of Action: Piercing the Corporate Veil;

(9)     Tenth Cause of Action: Intentional Infliction of Emotional Distress;

**-2-**

> (10)    Eleventh Cause of Action: Negligent Infliction of Emotional Distress; and

> (11)    Twelfth Cause of Action: Unfair and Deceptive Trade Practices.

Plaintiffs have also included a demand for punitive damages under North Carolina law.  Compl., ¶¶ 142-144, .

In their Motion to Dismiss, defendants contend that all supplemental claims as well as the demand for punitive damages should be dismissed in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that plaintiffs have failed to state claims upon which relief can be granted.

## II.    Rule 12(b)(6): Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989);  Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that  the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."    Id., at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later

establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u>, at 561 (alteration in original).

Post <u>Twombley</u>, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in the complaint that "raise a right to relief above the speculative level." <u>Id.</u>, at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

<u>Id.</u> (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." <u>Id.</u>, at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." <u>Id.</u>, at 570 (emphasis added).

While the Court was clear in <u>Twombly</u> that <u>Conley</u> was no longer controlling, <u>see</u> <u>Twombly</u>, 550 U.S. at 563, and <u>Felman Production Inc. v. Bannai</u>, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In <u>Ashcroft</u>, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Id.</u>, S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" <u>Id.</u> (citing <u>Twombly</u>, <u>supra</u>; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

-4-

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.

## III.   Discussion

-5-

### A. Second Cause of Action: a claim under the overtime provision of the North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.4

In plaintiffs' Second Cause of Action, they assert a claim for unpaid overtime wages under the North Carolina Wage and Hour Act (hereinafter "the NCWHA"). Plaintiffs have, however, asserted in their First Cause of Action a claim under the FLSA for unpaid overtime. [1] As a matter of state law, the NCWHA has by the language of the statute no application where the FLSA governs the employer-employee relationship. See N.C.Gen.Stat. § 95-25.14; Spencer v. Hyde County, 959 F.Supp. 721, 727 (E.D.N.C. 1997).

Plaintiffs argue in response that this court cannot dismiss their NCWHA claim until this court "definitely determines whether the FLSA controls." Response, at p. 3. Defendants admit that Wolf Creek Academy, which plaintiffs contends was their employer, is an enterprise under 29 U.S.C. § 203(s)(1)(B), and stipulate that "the FLSA is the appropriate claim for overtime wages . . . ."[2] Reply, at p. 1.

Thus, it appears clear to the court that any claim plaintiffs may have for unpaid overtime will be governed by the FLSA as defendants admit that Wolf Creek Academy is an enterprise under Title 29, and it appears from the allegations of the Complaint that such defendant fits squarely into the definition provided by Section 203(s)(1)(B). The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce," in part, as an enterprise that

---

[1]     Inasmuch as the FLSA provides for jurisdiction in either state or federal court, plaintiffs could have brought this action in state court.

[2]     Defendants deny liability and reserve the right to assert any exemptions under the FLSA.   Reply, at p. 1.

is engaged in the operation of ... an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution ....

29 U.S.C. § 203(s)(1)(B). The undersigned will, therefore, recommend that plaintiffs' Second Cause of Action be dismissed as the FLSA governs plaintiffs' claim for unpaid overtime wages.

> **B. Third and Fourth Causes of Action: Breach of Fiduciary Duty and Constructive Fraud**

In both the third and fourth causes of action, plaintiffs contend that defendants breached their fiduciary duty and committed constructive fraud when they mis-characterized their wages and employment status as that of "independent contractors.' Compl., at ¶¶ 91 & 95. Defendants contend that "obstacle preemption" under the FLSA bars these claims and that plaintiffs have not otherwise alleged sufficient plausible facts that would support such claims.

The inquiry as to whether the FLSA preempts plaintiffs' state law claims begins with whether plaintiffs' state-law claims are FLSA based, and if they are, whether they "stand[] as an obstacle to the accomplishment of the full purposes and objectives of the FLSA." Anderson v. Sarah Lee Corp., 508 F.3d 18, 193 (4th Cir. 2007)(citation and corresponding quotation marks omitted; brackets in the original).

First, the undersigned has considered whether plaintiffs' third and fourth causes of action are FLSA based. In each claim, plaintiffs reincorporate all previous paragraphs of the Complaint, which include the factual and legal allegations supporting their FLSA claim and the FLSA claim itself. Compl., at ¶¶ 88 & 93. Further, in each claim plaintiffs allege that the state-law tort is based on a breach of

-7-

defendants' fiduciary duty to accurately characterize their "wages and employment status." Id., at ¶¶ 90, 91, & 95. The Court of Appeals in Anderson held as follows:

> they [the class members] rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations. Importantly, the FLSA does not explicitly authorize states to create alternative remedies for FLSA violations. And, in view of the FLSA's unusually elaborate enforcement scheme, there cannot be the exceptionally strong presumption against preemption of such state remedies that would be warranted if the FLSA did not provide federal remedies. *See Abbot*, 844 F.2d at 1112. Nevertheless, in assessing whether the FLSA enforcement scheme preempts state remedies for FLSA violations, we must heed the Supreme Court's admonishment that "the mere existence of a federal regulatory or enforcement scheme"-even if the scheme is an appreciably detailed one-"does not by itself imply preemption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). And we must look for " 'special features warranting preemption,' " *id.* (*quoting Hillsborough*, 471 U.S. at 719, 105 S.Ct. 2371), such as the provision of exclusive remedies for enforcing rights expressly guaranteed by the federal statute, *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

Anderson v. Sarah Lee Corp., 508 F.3d at 193-194. The court further stated that "we must hold today that Congress prescribed exclusive remedies in the FLSA for violations of its mandates." Id., at 194.

> Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption. Our conclusion is consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims.

Id. In light of the decision in Anderson, plaintiffs' third and fourth causes are preempted as they are clearly dependent on and even incorporate their claims under the FLSA. Finding plaintiffs claims for breach of fiduciary duty and constructive fraud to be duplicative of the FLSA claim, the undersigned must recommend that the

-8-

third and fourth causes of action be dismissed based on obstacle preemption under the FLSA.

Inasmuch as these claims are clearly preempted, the undersigned will not discuss at length the alternative basis for dismissal under Rule 12(b)(6). It is, however, clear that plaintiffs' allegation that a fiduciary relationship existed between them and their employer is a legal conclusion that is unsupported by factual allegations from which one could plausibly conclude that a fiduciary relationship existed. Further, even the legal conclusion that a fiduciary relationship sprang from an employer-employee relationship finds no support in North Carolina law as "the relation of employer and employee is not one of those regarded as confidential." Dalton v. Camp, 353 N.C. 647, 651 (2001). A fiduciary relationship must exist between the parties before a claim can arise for breach of that fiduciary duty. White v. Consol. Planning, Inc., 166 N.C.App. 283, 293 (2004), disc. review denied, 359 N.C. 286 (2005). A fiduciary relationship arises only when plaintiffs place special confidence in another person, to the extent that the party in whom such special confidence is placed is bound to act in the best interests of the party placing the confidence. Dalton v. Camp, 353 N.C. at 651. An essential element of the fiduciary relationship is that the purported fiduciary exercised influence over the plaintiffs by virtue of the trust placed in such alleged fiduciary. Id., at 652. North Carolina law imposes no such duty on an employer. Thus, defendants would also be entitled to dismissal of the claim for breach of fiduciary duty under Rule 12(b)(6).

The failure to allege an extant fiduciary relationship is also fatal to plaintiff's claim of constructive fraud. "To assert a claim of constructive fraud, plaintiff must allege:(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." Clay v. Monroe, 189 N.C.App. 482, 488 (2008)(citation omitted and corresponding quotation marks deleted).  There being no fiduciary duty between these parties, plaintiffs have failed to state a claim for constructive fraud.

The undersigned will, therefore, recommend dismissal of these claims under obstacle preemption and, in the alternative, for failure to state cognizable claims under Rule 12(b)(6) as a matter of state law.[3]

### C.    Fifth Cause of Action: Conversion

Defendants next argue that because plaintiffs' claim for conversion is based on an allegation that defendants failed to accurately characterize and report their wages and employment status to the IRS, such claim is barred by Section 7422(a) of the Internal Revenue Code.  26 U.S.C. § 7422(a).  Section 7422(a) of the tax code provides as follows:

> **(a) No suit prior to filing claim for refund**
> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally

---

[3]       The court notes that in their Response, plaintiffs concede that these claims are preempted "by federal tax law" and that they "reluctantly concede[] that 26 U.S.C. § 7422 appears to preempt these state claims...."  Response, at pp. 3-4.  Section 7422(a) bars suit for employment taxes erroneously paid or collected until a claim has been filed with the IRS. Defendants only raise Section 7422 as a bar to plaintiffs' fifth cause of action, but not as a bar to the third and fourth causes of action.  While plaintiffs have intended to concede obstacle preemption, such conclusion cannot be clearly drawn from their response, only that they did not contest obstacle preemption.

**-10-**

assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Id. While the Court of Appeals for the Fourth Circuit has yet to take up the issue, it appears that other circuits have held that a claim by an employee against an employer for mis-classification of an employee as an independent contractor, which results in the employee being responsible for FICA taxes, whether brought under state law or FICA, is not cognizable and that the taxpayer's exclusive remedy is found under Section 7422. Umland v. PLANCO Financial Services, inc., 542 F.3d 59 (3rd Cir. 2008); McDonald v. Southern Farm Bureau Life. Ins. Co., 291 F.3d 718 (11th Cir. 2002).

Plaintiffs' concede the point. Response, at pp. 3-4. While the Court of Appeals for the Fourth Circuit has yet to address the issue, it is likely that such court would follow persuasive precedent from other circuits cited above. The undersigned will, therefore, recommend this cause of action be dismissed as barred by Section 7422.

**D.  Sixth and Seventh Causes of Action: Fraud and Negligent Misrepresentation**

The sixth and seventh causes of action for fraud and negligent misrepresentation center on plaintiffs' allegations that defendants allowed violent teenage boys to live in the group home supervised by plaintiffs without informing plaintiffs and concealing knowledge concerning such boys' violent histories.

The essential elements of a claim of fraud by misrepresentation are: (1) a false

-11-

representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Jolly v. Acad. Collection Serv., 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b) in pleading fraud, it is plaintiffs' obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby.

On the other hand, in order to plead fraud by omission (which plaintiffs appear to be doing in this case), plaintiffs must allege the following:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Breeden v. Richmond Community College, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted).

From the outset, the undersigned has concern with the plausibility of a claim for fraudulent omission of the fact that boys had a history of violence where plaintiffs knowingly went to work at a boarding school for troubled teens. Plaintiffs allege from the outset that

> Wolf Creek is a boarding school for **troubled teens** located in Madison County, North Carolina. Wolf Creek boards the teens in "cottages" where they live with "house parents."

-12-

Compl., at ¶ 11 (emphasis added). The Supreme Court in <u>Iqbal</u> held that because a complaint must "state[ ] a plausible claim for relief," Rule 12(b)(6) review requires the court to employ "its judicial experience and common sense" in making such determination. <u>Iqbal</u>, 129 S. Ct. at 1950. While it is certainly possible that a boarding school for non-violent troubled teens may well exist, absent an affirmative representation that the school excluded children with a history of violence, it simply is not plausible for persons seeking employment as house parents at a school for "troubled teens" to reasonably believe that the "trouble" which lead such children to be taken out of their own homes and placed in such group home excluded violent behavior.

Even putting such initial implausibility aside, the Complaint lacks any allegations of the source of the duty to speak, specific dates when the omissions allegedly occurred, the identity of precisely who was obligated to tell plaintiffs that some or all of the children they were to supervise had violent histories, what defendants expected to gain by keeping such information from plaintiffs, and how plaintiffs reasonably relied on such omissions to their detriment. Indeed, the allegations of the Complaint are antithetical to their claim of concealment because they allege that they were hired in October 2008, Compl., at ¶ 38, and that "[f]ights broke out between the boys on a daily basis." Compl., at ¶ 64. Taking these allegations as true, plaintiffs clearly knew that the boys in their cottage were violent from day one, making reliance on any purported concealment implausible.

In their response, plaintiffs focus on the acts of one boy, who allegedly sent

-13-

them a threatening letter, which plaintiffs contend resulted in them leaving defendants' employment when defendants readmitted that boy to their cottage despite the written threat. Response, at pp. 4-5. While these allegations are much more specific, they suffer from the same deficiencies that the more general allegations suffer inasmuch as plaintiffs specifically alleged that they knew of this particular boy's violent tendencies before he ever sent the letter, and that they had earlier complained to defendants concerning the boy's conduct:

> The Bonhams had addressed DH's violent tendencies with the Jones family before. DH's mother told Mrs. Bonham about DH's violent tendencies. She told Mrs. Bonham that DH was violent and his counselor warned her to keep DH away from children because he had harmed small children in the past. Mrs. Bonham then confronted Mrs. Jones about DH. She told Mrs. Bonham that DH's mother told her the same thing, but that DH's mom was a "little crazy." Mrs. Jones told Mrs. Bonham that they should just keep their kids away from DH.

Compl., at ¶ 69. The allegations of the Complaint simply provide insufficient factual allegations, accepted as true, to state a claim for fraud that would be plausible on its face.

Plaintiffs' claim for negligent misrepresentation suffers from similar problems. The essential elements of a claim for negligent misrepresentation are that plaintiffs justifiably relied to their detriment on information prepared without reasonable care by a person who owed the relying party a duty of care. Hudson-Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346 (1999). For the reasons discussed in regards to the claim of fraud, plaintiffs have failed to sufficiently allege facts that would show reasonable detrimental reliance on any misrepresentation. The lack of reasonable detrimental reliance requires dismissal of this claim.

-14-

Finally, negligent *omissions* (which appear to be what plaintiffs are claiming) as opposed to negligent misrepresentations cannot form the basis of a claim for negligent misrepresentation under North Carolina law. <u>Volumetrics Med. Imaging, Inc. V. ATL Ultrasound, Inc.</u>, 243 F.Supp.2d 86, 415 n. 13 (M.D.N.C. 2003); <u>Breeden v. Richmond Community College</u>, 171 F.R.D. at 202.

**E.  Eighth Cause of Action: Negligence**

In their eighth cause of action, plaintiffs base their claim of negligence first on grounds that are precluded by federal law and then on grounds that are precluded by state law.

First, in support of their claim for negligence, plaintiffs contend that "[d]efendants had a duty to the Bonhams to correctly characterize and report the Bonhams' wages and employment status ...." Compl, at ¶ 119. For the reasons discussed earlier, such a common law claim for negligence is preempted by the FLSA and otherwise precluded by Section 7422 and should be dismissed.

Plaintiffs also contend that defendants were negligent because they failed to "keep a safe working environment." <u>Id.</u> Plaintiffs fail to elaborate in such claim how the defendants made the work environment unsafe, but the court will read this claim in a light most favorable to plaintiffs and consider that such claim is based on a failure to inform them of the violent histories of the boys in their care. While plaintiffs have generally alleged that they sustained damages, they have failed to describe the damages they actually sustained. The essential elements of a cause of action for negligence are duty, breach of duty, proximate cause, and *damages*. <u>Camalier v.</u>

-15-

<u>Jeffries</u>, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995).  In order to recover, "all damages must flow directly and naturally from the wrong, and . . . they must be certain both in their nature and in respect to the cause from which they proceed." <u>People's Center, Inc. v. Anderson</u>, 32 N.C.App. 746, 748 (1977) (citation omitted). "[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source." <u>Id.</u>, at 748-49 (citation omitted).  Plaintiffs only allegation as to damages is that "[d]efendants proximately caused the Bonhams to suffer damages because of their actions alleged herein."  Compl., at ¶ 121.  To the extent plaintiffs are contending that they suffered physical damages based on their employers' alleged failure to keep a safe work environment, such a claim would be barred as their exclusive remedy would be under the North Carolina Workers' Compensation Act, N.C.Gen.Stat. § 97-1.

Defendants argue that any claim for emotional injury would be duplicative of a more specific cause of action, negligent infliction of emotion distress, and that it should be dismissed as duplicative.  Defendants cite the court to no authority for the proposition that dismissal is an appropriate under Rule 12(b)(6) where plaintiffs allege multiple claims for the same damage. The Federal Rules of Civil Procedure specifically allow a party to plead in the alternative:

> **(2) Alternative Statements of a Claim or Defense.**
> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

**-16-**

Fed.R.Civ.P. 8(d)(2). To the extent defendants are seeking dismissal based on overlapping claims, plaintiff "is master to decide what law he will rely on ..." <u>Bell v. Hood</u>, 327 U.S. 678, 681 (1946), and pleading in the alternative is an acceptable practice.

Dismissal of plaintiffs' claim for emotional damages for failure to keep a safe work environment is, however, warranted for other another reason. Emotional damages sustained due to negligence in the workplace is subsumed by North Carolina's Workers' Compensation Act:

> Emotional injuries, as well as physical injuries, from accidents arising out of and in the course of employment, are covered under the Workers' Compensation Act. *See Jordan v. Central Piedmont Community College*, 124 N.C.App. 112, 119, 476 S.E.2d 410, 414 (1996) ("[A]s long as the resulting disability meets statutory requirements, mental, as well as physical impairments, are compensable under the Act.").

<u>Reavis v. Carlyle & Co.</u>, 2005 WL 3291253, *4 (N.C.App. Dec. 6, 2005).[4] Plaintiff's negligence claim is, in its entirety, barred as it is covered under the North Carolina Workers' Compensation Act.

The undersigned will recommend that this claim for be dismissed as it barred by federal as well as state law.

**F. Ninth Cause of Action: Piercing the Corporate Veil**

The parties are in agreement that the FLSA requires no "veil piercing" to attach liability to individuals behind a corporate employer, as individuals may under certain circumstances be subjected to liability for unpaid wages under the FLSA. <u>Brock v.</u>

---

[4] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

<u>Hamad</u>, 867 F.2d 804, 808 n. 6 (4th Cir. 1989). Plaintiffs only argument is that the "piercing the corporate veil claim should not be dismissed for the same reasons the NCWHA claim cannot be dismissed." Response, at p. 6. As discussed above, the NCWHA has no application in this matter as the parties agree and the court has found a basis for Wolf Creek Academy to be an enterprise under Title 29, making it subject to the FLSA. Thus, the undersigned will recommend that this claim be dismissed.

G.    **Tenth and Eleventh Causes of Action: Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress**

Defendants have also moved to dismiss plaintiffs' claim of intentional infliction of emotional distress. The elements of that tort are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." <u>Hogan v. Forsyth Country Club</u>, 79 N.C. App. 483, 488, <u>disc. rev. denied</u>, 317 N.C. 334 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." <u>Id</u>., at 490. The court has reviewed the Complaint, wherein plaintiffs allege in support of this claim as follows:

129.    Plaintiff re-alleges and incorporates herein all allegations set out in paragraphs 1 through 128 above.

130.    Defendants acted extremely and outrageously and beyond all possible bounds of decency by their actions alleged herein.

Compl., at ¶¶ 129-130. While plaintiffs have incorporated all allegations into this claim, the alleged mis-characterization of their employment as independent contractors, the alleged failure to pay them overtime, and the alleged improper payment of FICA taxes cannot be transformed into state-law claims as they are either

**-18-**

preempted under the FLSA or precluded under Section 7422. When those allegations are put aside, all that remains in support of plaintiffs' IIED are their contentions concerning concealment as to violent histories of the boys they would be supervising.

Even if the court were to consider as true the allegation that defendants concealed the fact that the boys in plaintiffs' cottage had histories of violence, such concealment does not "exceed all bounds of decency," West v. King's Dep't Store, Inc., 365 S.E.2d 621, 625 (N.C. 1988), and cannot be "'regarded as atrocious, and utterly intolerable in a civilized community.'" Wagoner v. Elkin City School Bd. of Educ., 440 S.E.2d 119, 123 (N.C. Ct. App. 1994) (citation omitted).

The initial inquiry made by North Carolina courts is whether the alleged conduct is "extreme and outrageous." This is a question of law for the court. Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). In that analysis, under North Carolina law:

> Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Briggs v. Rosenthal, 73 N.C. App. 672, 327 S.E.2d 308 (1985) (*quoting* The Restatement of Torts). Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6). Johnson, supra, at 6.

In Hogan, wherein a defendant threatened plaintiff with bodily injury and advanced on her with a knife after she refused his sexual advances, the appellate court

found that plaintiff had stated a cause of action and that defendant's conduct was "beyond the `bounds usually tolerated by decent society.'" <u>Hogan v. Forsyth Country Club Co.</u>, <u>supra</u>, at 491.

While the conduct alleged herein could be construed as counterproductive to an efficient work environment, there are no plausible allegations that could cross the line drawn by <u>Hogan</u>, especially where the alleged concealment is viewed in context of plaintiffs seeking and obtaining employment at a school for *troubled teens* and knowing from day one of the violent tendency of the boys they were supervising.

Similarly, plaintiffs fail to state a claim for negligent infliction of emotional distress. The essential elements of a claim for negligent infliction of emotional distress include the following: (1) defendants <u>negligently</u> engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiffs severe emotional distress or mental anguish; and (3) the conduct did in fact cause the plaintiffs severe emotional distress. <u>Pardasani v. Rack Room Shoes. Inc.</u>, 912 F. Supp. 187, 192 (M.D.N.C. 1996). The only acts plaintiffs have alleged (that would not otherwise be excluded from the realm of state tort by the FLSA or Section 7422) are the same <u>intentional</u> acts, discussed immediately above, concerning concealment of the fact that the troubled boys they would be supervising had violent pasts. This manner of pleading negligent infliction has long been held to be insufficient:

> The district court likewise dismissed Mitchell's negligent infliction of emotional distress claim after holding that this tort requires a showing of outrageous conduct. We decline to review that holding because we believe the negligent infliction claim should have been dismissed for a more basic reason: Mitchell's complaint does not allege any negligent acts by Lydall. <u>See Johnson v. Ruark Obstetrics & Gynecology Assocs.</u>,

-20-

<u>P.A.</u>, 395 S.E.2d 85, 97 (N.C.1990) ("to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, . . ."). Mitchell's complaint contains merely a single, conclusory allegation that Lydall was negligent; the material factual allegations charge nothing but intentional acts by Lydall in failing to accommodate Mitchell's MS condition and in discharging him. Taking these material factual allegations as true and construing them in the light most favorable to Mitchell . . . we must conclude that they do not state a claim for negligent infliction of emotional distress.

<u>Mitchell v. Lydall, Inc.</u>, 1994 WL 38703, *3 (4th Cir. 1994). A claim for *negligent* infliction of emotional distress is, therefore, subject to dismissal when "the material factual allegations charge nothing but intentional acts . . . ." <u>Id.</u> Inasmuch as plaintiffs rely on the allegations of intentional concealment, the undersigned will recommend that his claim for Negligent Infliction of Emotional Distress be dismissed.

**H.     Twelfth Cause of Action: Unfair and Deceptive Trade Practices.**

A state-law claim for Unfair and Deceptive Trade Practices (hereinafter "UDTPA") is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." <u>Id.</u> The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. <u>See</u> <u>Roberson v. Dale</u>, 464 F.Supp. 680 (M.D.N.C. 1979). <u>See also</u> <u>Liggett Group, Inc. v. Sunas</u>, 113 N.C. App. 19, 31 (1993). To state a cause of action under the UDTPA, plaintiffs must allege the following:

(1)     conduct constituting an "unfair or deceptive act or practice;"

(2)     conduct "in or affecting commerce," and

(3)     that such conduct proximately caused actual injury to plaintiff.

**-21-**

<u>Food Lion, Inc. v. Capital Cities/ABC Inc.</u>, 951 F.Supp. 1224, 1230 (M.D.N.C. 1996).

The UDTPA does not "extend to run-of-the mill employment disputes." <u>Dalton v. Camp</u>, 353 N.C. at 656. To be applicable to an employment relationship, plaintiffs would be required to allege "special circumstances," <u>see</u> <u>Anderson v. Sarah Lee Corp.</u>, 508 F.3d 190-191, which have not been alleged in this action. Indeed, while plaintiffs cite the court to allegations concerning the job being in commerce, such element is not here as issue: rather, the court has reviewed the Complaint for "special circumstances" that would bring this employment relationship under the umbrella of the UDTPA. Failure of an employer to tell an employee of all aspects of the job to be accomplished or the perils that might be encountered is simply not among or akin to the recognized special circumstances that would make the employment subject to the UDTPA. <u>Id.</u> If it were, the UDTPA would then be violated in a myriad of employment relationships, such as where a bank fails to inform a new teller that banks get robbed, where a telephone company fails to tell a lineman than he could be electrocuted or fall, or where an NFL team fails to tell a lineman that he could be seriously injured by contact with an opposing player. The undersigned will recommend that this claim be dismissed as employment relationships are excluded as a matter of law from coverage by the UDTPA absent pleading special circumstances which have not been herein pled.

I.       **Demand for Punitive Damages**

As a matter of state law, "punitive damages" is not a cause of action, but is

instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).

Plaintiffs have, quite properly, not labeled their demand for punitive damages as a separate cause of action, but have set it out in close proximity to the *ad damnum* clause of their Complaint. See Compl., at ¶¶ 142-144. This demand must, however, be either dismissed or stricken as all the state law claims that would have supported the demand for punitive damages are subject to dismissal. The undersigned will, therefore, recommend the dismissal or the striking of the punitive damages claim.[5]

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

---

[5] As it is not before this court at this time, such recommendation as to the demand for punitive damages, which is asserted under state law, see Compl., at ¶ 144, does not reach the issue of whether § 216(b) of the FLSA permits the recovery of punitive damages. See *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F.Supp.2d 737 (E.D.Va. 2000) (Ellis, J.)("To allow punitive damages, which, of course, are not compensatory, but rather are designed to 'punish and deter the wrongdoer,' would therefore be inconsistent with the statute's compensatory remedial scheme." (citation omitted)).

-23-

defendants' Partial Motion to Dismiss (#12) be **ALLOWED,** that Causes of Action two through twelve be **DISMISSED**, and that the demand for punitive damages under state law be either **DISMISSED** or **STRICKEN**, all for the reasons herein stated.

### Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: December 29, 2010

Dennis L. Howell
United States Magistrate Judge

**-24-**

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

## CIVIL CASE NO. 1:10cv190

| | |
|---|---|
| JOHN BONHAM and CHARLYNN BONHAM, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WOLF CREEK ACADEMY; ABOUT FACE MINISTRIES; PATRICIA A. JONES; JAMES E. JONES; and JEREMY C. JONES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**O R D E R**

**THIS MATTER** is before the Court on the Defendants' Partial Motion to Dismiss [Doc. 12] and the Magistrate Judge's Memorandum and Recommendation [Doc. 19] regarding the disposition of that motion.

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the motion to dismiss and to submit recommendations for its disposition.

On December 29, 2010, the Magistrate Judge filed a Memorandum and Recommendation [Doc. 19] in this case containing proposed conclusions of law in support of a recommendation regarding the Defendants' motion [Doc. 18]. The parties were advised that any objections to the Magistrate Judge's Memorandum and Recommendation were to be filed in writing within fourteen (14) days of service. The period within which to file objections has expired, and no written objections to the Memorandum and Recommendation have been filed.

After a careful review of the Magistrate Judge's Recommendation [Doc. 19], the Court finds that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby **ACCEPTS** the Magistrate Judge's Recommendation that the Defendants' Partial Motion to Dismiss be allowed, that the Second through Twelfth Causes of Action be dismissed, and that the demand for punitive damages under state law be either dismissed or stricken.

**IT IS, THEREFORE, ORDERED** that the Defendants' Partial Motion to Dismiss [Doc. 12] is **ALLOWED**; the Second through Twelfth Causes of Action stated in the Plaintiffs' Complaint are **DISMISSED**; and the Plaintiffs' demand for punitive damages under state law is hereby **DISMISSED**.

**IT IS SO ORDERED**.

Signed: February 8, 2011

Martin Reidinger
United States District Judge